CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

BENJAMIN F. FARKAS (CABN 308811)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7223
FAX: (415) 436-7234
Benjamin.farkas@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS EDUARDO PALMA-GUILLEN,<br><br>Defendant. | NO. 3:26-CR-00154-001 JD<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: August 17, 2026<br>Time: 11:00 a.m.<br>Court: Hon. James Donato |

## INTRODUCTION

Defendant Carlos Eduardo Palma-Guillen was arrested on January 15, 2026, by SFPD for selling drugs in the Tenderloin neighborhood of San Francisco. His case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin neighborhood through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history or was in possession of smaller amounts of narcotics, leading the United States to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in

further drug trafficking.

In this case, the United States and Palma-Guillen both urge the Court to impose a time served plus one court day sentence followed by a three-year term of Supervised Release that includes a suspicionless search condition and a stay away order from the Tenderloin. By the time of the sentencing hearing on August 17, 2026, Palma-Guillen will have been in custody for approximately four and one-half months. This case is Palma-Guillen's first offense, he is young, and he will almost certainly be deported from the United States. The record demonstrates that this disposition is an effective way to free the community from the scourge of narcotics dealers.

**STATEMENT OF FACTS**

The parties agree on the facts of this case, and they are set forth both in the Plea Agreement in paragraph 2, and in the PSR in paragraphs 7-11. In short, the salient facts are as follows:

On or about January 15, 2026, in the Northern District of California, and more specifically in the Tenderloin District of San Francisco in the vicinity of the intersection of Mason Street and Market Street, Palma-Guillen was standing with a few other men. An undercover San Francisco Police Department ("SFPD") officer negotiated to purchase a small amount of methamphetamine from one of those men, Palma-Guillen's codefendant Luis Murillo-Galiano. Palma-Guillen handed Murillo-Galiano an item to assist Murillo-Galiano in completing the transaction. An SFPD arrest team located Palma-Guillen shortly afterward and placed him under arrest after the undercover officer confirmed that Palma-Guillen had assisted in the transaction. In a search incident to arrest, officers found the following on Palma-Guillen's person:

- 19 grams of fentanyl;
- 15 grams of methamphetamine;
- 14.2 grams of cocaine base; and
- 15.9 grams of heroin.

Palma-Guillen admitted in his Plea Agreement that he possessed these substances with the intent to distribute them to another person or persons. *See* Plea Agreement ¶ 2. He also admitted that the controlled substances he possessed have a combined drug weight of between 100 kg and 400 kg under

Section 2D1.1 of the U.S. Sentencing Guidelines. *Id.* He further admitted that he is not a citizen or national of the United States and is a citizen of Honduras, and that he entered this country illegally and has no legal status. *Id.*

On March 18, 2026 a criminal complaint issued charging Palma-Guillen with possession with the intent to distribute methamphetamine and fentanyl. On April 3, 2026, an Information was filed charging Palma-Guillen with one count of possession with the intent to distribute fentanyl. On may 11, 2026, Palma-Guillen entered his unconditional guilty plea pursuant to a B Plea Agreement to the one count charged—possession with the intent to distribute fentanyl.

Sentencing is set for August 17, 2026. The United States' Sentencing Memorandum is therefore timely filed pursuant to Local Rule 32-5(b).

**APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY**

The parties agree that the United States Sentencing Guidelines should be calculated as follows:

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. §2D1.1(a)(5)(c)(8):<br>Drug quantity: Based on converted drug weight of all controlled substances possessed by Palma-Guillen on January 15, 2026, more than 100 kg but less than 400 kg. | 24 |
| b. | Zero Point Offender Adjustment: U.S.S.G. § 4C1.1 | -2 |
| c. | Acceptance of Responsibility:<br>If he meets the requirements of U.S.S.G. § 3E1.1, he is entitled to a three-level reduction. | - 3 |
| d. | Adjusted Offense Level: | 19 |

The parties further agree that, based on a Criminal History Category I, Palma-Guillen's Guidelines range is 30-37 months.

**SENTENCING RECOMMENDATION**

Consistent with the Plea Agreement in this case, the United States requests a sentence of time served plus one day, and a three-year term of supervised release that includes the special condition that Palma-Guillen must stay away from the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the Plea Agreement because it prevents Palma-Guillen from returning to the Tenderloin, the area from which Palma-Guillen's conviction for drug trafficking arises.

Finally, the recommendation is not greater than necessary to achieve the goals the Court is required to consider when imposing a sentence under Section 3553 of Title 18 of the United States Code.

## I. Section 3553 factors

### A. Nature and circumstances of the offense and history and characteristics of the defendant

Palma-Guillen is 28 years old. He admits that he is "not a citizen or national of the United States" and that he is "a citizen of Honduras." He also admits that he "entered this country illegally without inspection" and that he has no legal status in the United States. This conviction "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States." Plea Agreement ¶ 1. Palma-Guillen has only one prior arrest, for a 2024 incident in which he was the passenger in a vehicle in which SFPD found narcotics. PSR ¶ 35. He was not charged in that incident. *Id.*

For his part, Palma-Guillen claims that when he entered the United States he initially worked in construction, and turned to drugs trafficking only when he lost that job and faced pressure to pay for his father's ongoing medical treatment in Honduras. As described by the Probation Office: "The bills back in Honduras continued to pile up as Palma-Guillen's father required surgery and eventually dialysis three times a week. Palma-Guillen described that he felt the pressure and responsibility mounting and his hopelessness drove him to begin selling drugs." PSR at ¶ 42.

Palma-Guillen has several mitigating facts in his history. As noted by the Probation Office:

> The Court may wish to consider that Palma-Guillen was raised in poverty, his relatively young age, and his motivation for coming to the United States was to help pay for his father's medical costs. Additionally, the Court can consider that this is the defendant's first conviction and first significant custodial sentence.

PSR ¶ 78. All these factors suggest that a shorter sentence of incarceration is appropriate in this case.

### B. Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, remains in crisis, especially at night. As the Court is well aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like

fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. While law enforcement efforts are making a difference, there is still work to be done. The Tenderloin drug market not only creates suffering for its participants but also dire externalities for the people and families that live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Palma-Guillen has no prior convictions. The proposed sentence—of time served plus one day and a three-year term of supervised release with a highly-restrictive geographic restriction—is a significant downward variance from the Guidelines range. But it is one that the government submits is appropriate given Palma-Guillen's conduct, his status as a street-level dealer, the unique problems the Tenderloin faces, and the need for deterrence and protection of the public. Notably, for Palma-Guillen to receive this plea offer, Palma-Guillen waived detention and has been detained since his arrest; the government offered to recommend a time-served sentence in exchange for his agreement to promptly plead guilty. As a result, Palma-Guillen's plea allows the Government to efficiently allocate its resources in responding to the scourge of street-level dealing affecting the Tenderloin.

While the government does not know much about him beyond what is in the PSR, Palma-Guillen does not have a history of returning to drug trafficking after being charged; while he may have been involved in drug trafficking at the time of his prior arrest in 2024, he was never charged and no deterrent was in place at that time. This is his only charge and conviction, and he will almost certainly be removed from the United Staters and ordered not return.

While the Court could give Palma-Guillen more prison time, the government does not believe it is necessary in this case. The arrest, detention, prompt guilty plea and factual admissions combined with the three years of supervision, the stay away order coupled with almost certain deportation, are sufficient general and individualized deterrence in this case. Palma-Guillen is on notice that if he returns to the United States without permission or to the Tenderloin (in violation of his supervised release terms) he will invite new charges in addition to supervised release violations. If Palma-Guillen violates his stay-away order and is apprehended, he will surely face a significant sentencing recommendation from the government and a significant sentence from this Court for having violated the terms of his supervised

release.

## II. The necessity of the proposed supervised release special conditions

A three-year term of supervised release is required by statute for the drug-trafficking offense to which Palma-Guillen pleaded guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to impose a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will Palma-Guillen be prohibited from engaging in any further unlawful conduct, but Palma-Guillen will be prohibited from entering the Tenderloin without prior approval by the Probation Office:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Laguna Street, on the north by Sutter Street, on the east by Powell Street and 5th Street, and on the south by Folsom Street.

Combined with a suspicionless search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained.

The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where courts in this District have encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-CR-00002 CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553 CRB.

## CONCLUSION

The United States joins with the Palma-Guillen in recommending a time served plus one court day sentence. While not as forceful a sentence as this Court many times imposes for drug dealers in the Tenderloin, the United States believes it to be fair and just and not harsher than necessary to accomplish

all the sentencing objectives under the 3553a factors. Palma-Guillen seems to be doing what he can to make amends for his bad decision to come into this country illegally in the first instance, and then to sell drugs instead of seeking lawful means of supporting his family. Hopefully, he will find a productive path when he returns home. A longer prison sentence for him is harsher than needed under the specific circumstances in this case.

For all of these reasons, the government recommends that the Court sentence Carlos Eduardo Palma-Guillen to a sentence of time served plus one day, with a release order assuring that Palma-Guillen will be released from his current jail to United States Marshal Service custody and then released from 450 Golden Avenue on the last day of his custodial sentence, to be followed by a term of supervised release of three years with the special conditions agreed to by the parties in the contemplated Plea Agreement, including the stay-away condition.

DATED: July 25, 2026

Respectfully Submitted,

CRAIG MISSAKIAN
United States Attorney

*/s/ Benjamin F. Farkas*
BENJAMIN F. FARKAS
Assistant United States Attorney